UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 18-11373-RGS

LEE P. UNITT

v.

DANIEL BENNETT, et al.

MEMORANDUM AND ORDER

August 5, 2019

STEARNS, D.J.

Now before the court are the Motion to Dismiss (#38) of Marylou Sudders and Monica Bharel and the Motion to Dismiss (#50) of Carol Gladstone. For the reasons stated below, the court will GRANT the motions.

BACKGROUND

Plaintiff Lee Unitt complains of the conditions of confinement while she was incarcerated at MCI Framingham. She claims, *inter alia*, that she was exposed to dangerous airborne particulates, housed in cells without sufficient circulation or cooling, and subject to overcrowded conditions. According to Unitt, these conditions aggravated her already serious medical condition and caused her health to deteriorate.

Unitt brings claims for injunctive relief under the Toxic Substances Control Act, 15 U.S.C. § 2601 *et seq.* and the Clean Air Act, 42 U.S.C. § 7401 *et seq.* She also brings claims under 42 U.S.C. § 1983 ("§ 1983") seeking injunctive and monetary relief. She sues Sudders and Bharel in their official and individual capacities and Gladstone in her official capacity.

DISCUSSION

I. Claims for Injunctive Relief

Since commencing this action, Unitt has been released from incarceration. In her opposition (#54), Unitt argues that her release did not moot her request for injunctive relief because, if she violates the terms of her 20-year period of probation, she would return to MCI Framingham where the dangerous conditions would continue to persist. *See id.* at 7. However, the mere possibility that Unitt will be re-incarcerated for a probation violation sometime in the next 20 years is too speculative to confer standing on her to seek injunctive relief, whether her claim arises under the Toxic Substances Control Act, the Clean Air Act, or § 1983. *See Horne v. Flores*, 557 U.S. 433, 445 (2009) ("To establish standing, a plaintiff must present an injury that is concrete, particularized, and actual or imminent . . . .").

II. § 1983 Claims for Damages Against Bharel and Sudders

In the absence of standing to pursue injunctive relief, Unitt's only remaining claims are those for damages under § 1983. Unitt is not pursuing such a claim against Gladstone.

With regard to the § 1983 claims against Bharel and Sudders, the court concludes that Unitt has failed to state a claim upon which relief may be granted because she has not alleged facts from which the court may reasonably infer that these two defendants were personally involved in the deprivation of Unitt's rights.[1]

In the context of a § 1983 claim, "only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable." *Cepero-Rivera v. Fagundo*, 414 F.3d 124, 129 (1st Cir. 2005). The allegations against Bharel, who is the Commissioner of the Massachusetts Department of Public Health ("DPH"), do not demonstrate that she was

---

[1] For purposes of this Memorandum and Order, the court assumes without deciding that Unitt has sufficiently pled conditions of confinement which fall short of the Eighth Amendment requirement "that inmates be furnished with the basic human needs, one of which is 'reasonable safety.'" *Helling v. McKinney*, 509 U.S. 25, 33 (1993) (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989)); *see also id.* at 35 (affirming that prisoner "states a cause of action under the Eighth Amendment by alleging that [defendants] have, with deliberate indifference exposed him to levels of [second-hand smoke] that pose an unreasonable risk of serious damage to his future health").

personally involved in the Eighth Amendment violations of which Unitt complains.

The DPH is required to make rules and regulations for prisons "regarding . . . the ventilation of the building . . . and the general health and safety of the detainee." M.G.L. ch. 111, § 21. Under the DPH's own regulations, a representative of the DPH must inspect each correctional facility at least two times a year and make a written report. *See* 105 C.M.R. chs. 451.401, 451.402. Where correction is necessary, the DPH reviews the facility's plan for remediation and can advise the superintendent on the methods that should be employed to correct the deficiencies. *See* 105 C.M.R. chs. 451.404-451.406. In extreme circumstances where the Department of Correction fails to correct a deficiency that poses a serious threat to health and safety, the Commissioner of the DPH may ask the governor to declare a public health emergency. *See* 105 C.M.R. ch. 451.410. Further, the Commissioner of the DPH may order that a non-complying correctional facility be closed until a deficiency is corrected. *See* M.G.L. ch. 111, § 21.

Notwithstanding this authority of DPH, the onus of complying with DPH regulations for correctional facilities is on the Massachusetts Department of Correction (or other authority operating the prison or jail). DPH is required to provide a copy of its regulations to the "proper authority"

and "[s]aid official shall enforce said rules." M.G.L. ch. 111, § 21; *see also* 105 C.M.R. ch. 451.011 (stating that, under M.G.L. ch. 111, § 21 "[o]fficials responsible for maintaining correctional facilities are responsible . . . for enforcing" the DPH regulations for correctional facilities).

The Commissioner of the DPH cannot be deemed to have been personally involved in creating or maintaining inhumane conditions of confinement in a prison simply by being notified of the same and allegedly failing to use her powers to address them. The scope of DPH regulations extends far beyond those for the health and sanitation standards for correctional facilities. It has also promulgated regulations concerning a myriad of other issues, including the control of radiation, thyroid blocking agents, mammography facilities, hospitals, blood transfusion, hospice programs, birth centers, dialysis units, long-term care facilities, temporary nursing service agencies, substance abuse program, physical examinations of school children, head injuries in extracurricular athletic activities, immunization, nutrition standards for school meals, epidemiology records, rabies treatment, tuberculosis treatment, beaches, residential facilities, recreational camps, lead poisoning, medical waste, food manufacturing, and skating rinks. *See generally* 105 C.M.R. chs. 100-900. While the Commissioner of DPH may enforce these regulations, given the breadth of

the matters she oversees, any alleged failure to identify a regulatory violation or ensure correction of the same is not tantamount to personal involvement for purposes of liability under § 1983.  *Cf. Feliciano-Hernandez v. Pereira-Castillo*, 663 F.3d 527, 536 (1st Cir. 2011) "[N]ot every official who is aware of a problem exhibits deliberate indifference by failing to resolve it." (internal quotation marks omitted)).  For the same reason, Sudders, who, as Secretary of the Massachusetts Executive Office of Health and Human Services oversees the DPH and other agencies, is not "personally involved" in any unconstitutional conditions of confinement at MCI Framingham.

## CONCLUSION

In accordance with the foregoing, the court hereby orders that the Motion to Dismiss (#38) of Sudders and Bharel and the Motion to Dismiss (#50) of Gladstone are GRANTED.  The Clerk may terminate these three defendants as parties to this action.

**SO ORDERED.**

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE