UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 18-11373-RGS

LEE P. UNITT

v.

DANIEL BENNETT, et al.

MEMORANDUM AND ORDER
ON DEFENDANTS' MOTION TO DISMISS, OR
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

April 3, 2020

STEARNS, D.J.

In this lawsuit, plaintiff Lee Unitt complains of oppressive conditions of confinement during her incarceration at the Massachusetts women's prison, MCI Framingham — namely, oppressive heat, lack of ventilation, and exposure to dangerous airborne particulates, such as asbestos and PCBs, and mold. She alleges that these conditions caused her preexisting serious health problems to significantly worsen. *See* Am. Compl. (Dkt #32). Unitt brings claims for injunctive relief under the Toxic Substances Control Act, 15 U.S.C. § 2601 *et seq.*, and the Clean Air Act, 42 U.S.C. § 7401 *et seq.*[1] She also brings

---

[1] Unitt concedes that neither of these federal environmental statutes authorizes a private right of action for damages. Therefore, these claims will be summarily dismissed.

Eighth Amendment claims of cruel or unusual punishments under the Federal Civil Rights Act, 42 U.S.C. § 1983, seeking injunctive and monetary relief.[2] Over the course of the litigation, several defendants have been dismissed. Now before the court is a motion brought by the remaining seven defendants to dismiss, or in the alternative, for entry of summary judgment. The remaining defendants are the former Secretary of the Massachusetts Executive Office of Public Security and Safety, three former Commissioners of the Massachusetts Department of Correction (DOC), and one present and two former Superintendents of MCI Framingham.

DISCUSSION

I. Claims for Injunctive Relief

Since initiating this action, Unitt has been released from DOC custody, thus mooting her prayers for injunctive relief. Unitt makes a familiar argument that her claims fit within the narrow exception to the mootness doctrine made for cases that are "capable of repetition, yet evading review." *See Roe v. Wade,* 410 U.S. 113, 125 (1993), quoting *S. Pac. Terminal Co. v. ICC,* 219 U.S. 498, 515 (1911). The exception, however, is not applicable here,

---

[2] The court heard oral argument on the motion on February 28, 2020. Unitt sought leave to supplement the pleadings on the issue of exhaustion of remedies, which was granted. The supplemental pleading was filed on March 11, 2020. Dkt #93.

as there is no "'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur involving the *same complaining party*." *Murphy v. Hunt*, 455 U.S. 479, 482 (1982), quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (per curiam) (emphasis added).[3]

## II. Statute of Limitations

Treating June 29, 2018, as the filing date for this action, defendants argue that any injuries for allegedly unconstitutional conditions of confinement that pre-date June 29, 2015 are time-barred. Defendants' statute of limitations argument ignores the procedural history of the case. As originally filed, Unitt's Complaint set out various claims regarding allegedly inadequate medical care she received while at MCI-Framingham together with her present complaints regarding environmental conditions at the institution. *See Unitt v. Spencer, et al.*, C.A. No. 17-11468-RGS. On June 28, 2018, the court ordered that the two sets of claims be severed for reasons of improper joinder, but as a matter of fairness, allowed Unitt to file an amended second complaint. Sensitive to the limitations issue, the court further ordered:

> As long as a proposed amended complaint is filed by May 22, 2018, for purposes of the statute of limitations and relation back of amendments, the date this action was commenced (August 3,

---

[3] Unitt's theory of non-mootness relies on possible injuries to others rather than to the "the same complaining party," *i.e.*, herself.

> 2017) will be considered to be the commencement date of any new case opened as result of severing claims from this action.

Order (Dkt #15), at 27.

### III. Official Capacity Claims

Under the Eleventh Amendment, a State, its agencies, and agency officials acting in their official capacities are not "persons" for purposes of 42 U.S.C. § 1983, and therefore are not subject to suit for money damages in the federal courts without the State's consent or the abrogation of State sovereignty by Congress acting under its Fourteenth Amendment powers. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 65-67 (1989); *Lopes v. Commonwealth*, 442 Mass. 170, 175 (2004). The Commonwealth has not consented to being sued for money damages in either the federal courts or in its own courts under section 1983, nor has Congress authorized such suits. *See Woodbridge v. Worcester State Hosp.,* 384 Mass. 38, 44-45 (1981). Thus, Unitt's claims for money damages against the remaining defendants in their official capacity must be dismissed.

State officials, however, who are sued in their personal capacity for constitutional violations are "persons" subject to suit for money damages under section 1983. *Hafer v. Melo*, 502 U.S. 21, 25-26 (1991) (distinguishing personal capacity from official capacity suits). Personal liability must, however, "be based on [the official's] own acts or omissions amounting at the

4

least to reckless or callous indifference to the constitutional rights of others and not on acts or omissions of others under the doctrine of respondeat superior." *Robinson v. Commonwealth*, 32 Mass. App. Ct. 6, 12 (1992). Consequently, Unitt's damages claims against the remaining defendants in their personal capacities do not fall within the Eleventh Amendment immunity bar.

### IV. Exhaustion of Administrative Remedies

Defendants next object that Unitt failed to exhaust her administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). The PLRA requires that a prisoner complaining of prison conditions "must now exhaust all available remedies" before filing suit under section 1983, "or any other Federal law." *Ross v. Blake*, 136 S. Ct. 1850, 1857-1858 (2016). The exhaustion of remedies requirement is mandatory. *Id.* at 1858 (rejecting a "special circumstances" exception to the exhaustion requirement created by the lower court). Because the PLRA requires "proper," not merely "simple" exhaustion of available remedies, a procedurally defective grievance does not comply with the Act. *Woodford v. Ngo*, 548 U.S. 81, 93-99 (2006) (untimely filing). The exhaustion requirement extends to available administrative appeals as well as primary grievance procedures. *Pozo v. McCaughtry*, 286 F.3d 1022, 1023-1024 (7th

Cir. 2002). *See also* Mass. Gen. Laws ch. 127, §§ 38E ("An inmate shall not file any claim that may be the subject of a grievance under [Mass. Gen. Laws, ch. 127, §] 38E unless the inmate has exhausted the administrative remedy established pursuant to said section 38E."). Finally, the PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). *See also O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060-1061 (9th Cir. 2007) (claims under the Americans with Disabilities Act and the Rehabilitation Act).

In moving for summary judgment, defendants argue that the only grievances Unitt filed on the issues raised in her present complaint were untimely. According to the affidavits of the MCI Institutional Grievance Coordinator and her assistant (Dkts #72-5, #72-6), Unitt submitted only one formal grievance, and that was in 2018. The grievance was lengthy and cited systemic institutional deficiencies dating back to 2005. The grievance was initially rejected because Unitt had failed to first submit an informal grievance. She then followed with one, but it was not processed with the explanation that Unitt had failed to file it within five days of becoming aware of the grounds of her grievance. Unitt then grieved the rejection of her

6

informal grievance, arguing that she had not become aware of all the underlying circumstances until less than five days before her first attempt to grieve the issue. That grievance was denied, and then Superintendent Allison Hallett upheld the denial.

In rebuttal, Unitt argues that her effort to exhaust her administrative remedies should be viewed through the prism of the numerous letters she wrote to successive MCI-Framingham superintendents from 2016 through 2018. Some of the letters written to Superintendent Hallett bear the heading "Re: Exhaustion of my Administrative Remedies." There is no dispute that they were received. *See* Dkts ##79-1 through 79-4.

All of this is a twisted trail to follow and to an outside viewer there are Kafkaesque aspects to the DOC's grievance process.[4] This is not, perhaps

---

[4] Some of this is no doubt due to the shape-shifting nature of the grievance process itself. Higgins's affidavit states that "as of May 2017," "inmates were required . . . to use the Step 1 Informal Complaint Resolution process and its related form before being permitted to file a formal grievance . . . this required an inmate to file an informal complaint form within five working days of the actual incident or within five working days of the inmate's becoming aware of the incident or situation." Higgins Aff. ¶ 2 (Dkt #72-6). Case law suggests that, prior to the DOC regulations implemented in 2017, inmates had ten working days to file from the date the inmate because aware of his or her grievance, and also had the choice of submitting the grievance to the Superintendent, the Deputy Superintendent, the Facility Administrator, or the Institutional Grievance Coordinator. *See Thompson v. Worcester Cty.*, C.A. No. 10-40126-FDS, 2011 WL 4829972, at *3 (D. Mass. Oct. 11, 2011). It also appears from the case law that under the prior regulations the first filing of an informal grievance was not required.

happily, an issue of law for the court to resolve. Despite the strictures an inmate must abide, and the corners she must square, at the end of the day administrative exhaustion under the PLRA is not a pleading requirement. Rather, failure to exhaust is an affirmative defense for which defendants bear the burden of proof. *See Jones v. Bock*, 549 U.S. 199, 216 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Because there are legitimate issues of fact as to whether Unitt was given a fair opportunity to exhaust her remedies, it is for a finder of fact to make the ultimate determination whether her efforts were sufficient to satisfy the goals of the PLRA, which are to permit legitimate complaints to be resolved locally by prison authorities while protecting the federal courts from frivolous or marginal lawsuits. *See Ross v. Blake,* 136 S. Ct. at 1859, 1860 (exhaustion is "unavailable" where a purported grievance process is incapable of offering any redress whatsoever, or is so opaque that it "practically speaking" is "incapable of use," or where prison administrators thwart inmates from "taking advantage of a grievance process through machinations, misrepresentation, or intimidation.").

V. Sufficiency of Unitt's Amended Complaint

To state a claim upon which relief may be granted, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff's obligation in establishing a claim "requires more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "contain sufficient factual matter, accepted as true" to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Determining whether a pleading meets the plausibility requirement is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In the context of a § 1983 claim, "only those individuals who participated in the conduct that deprived the plaintiff of [her] rights can be held liable." *Cepero-Rivera v. Fagundo*, 414 F.3d 124, 129 (1st Cir. 2005). A supervisory official cannot be held vicariously liable under section 1983 on a theory of respondeat superior. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 n.58 (1978). *See also* C*ity of Canton v. Harris*, 489 U.S. 378, 385 (1989). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant,

through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.  A supervisor, in other words, can be held liable "only on the basis of [his or her] own acts or omissions," pled properly together with the requisite state of mind.  *Figueroa v. Aponte-Roque*, 864 F.2d 947, 953 (1st Cir. 1989); *cf. Camilo-Robles v. Zapata*, 175 F.3d 41, 44 (1st Cir. 1999).

In this regard, the allegations in the Complaint against Secretary of Public Safety Daniel Bennett, and former DOC Commissioners Thomas Turco, Carol Higgins O'Brien, and Luis Spencer are framed under no more than a theory of vicarious liability.  There are no plausible allegations that any of these four defendants were directly involved in the creation or maintenance of the allegedly unconstitutional conditions at MCI Framingham about which Unitt complains.  On the other hand, it take no leap of imagination to infer that the remaining three defendants, who hold or held the position as Superintendent of MCI Framingham, were sufficiently involved in and responsible for the day-today operations of the prison such that they could be found liable for the alleged constitutional violations that Unitt asserts.

An Eighth Amendment claim of cruel and inhumane conditions of confinement depends on proof of two elements, one objective, and the other

subjective. *Staples v. Gerry*, 923 F.3d 7, 13 (1st Cir. 2019). First, "the deprivation alleged must be, objectively, 'sufficiently serious,' . . . [it] must result in the denial of 'the minimal civilized measure of life's necessities.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citations omitted). Second, a plaintiff must show deliberate indifference on the part of the responsible prison officials. *Wilson v. Seiter*, 501 U.S. 294, 302-303 (1991). "In order to establish deliberate indifference, the complainant must prove that the defendants had a culpable state of mind and intended wantonly to inflict pain. . . . While this mental state can aptly be described as 'recklessness,' it is recklessness not in the tort-law sense but in the appreciably stricter criminal-law sense, requiring actual knowledge of impending harm, easily preventable." *DesRosiers v. Moran*, 949 F.2d 15, 19 (1st Cir. 1991).

"[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837-838. Even where prison officials are aware of the risk of harm, they "may be found free from liability

11

if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844. The *Farmer* test does not, however, require that an inmate prove that a prison official intended to cause her harm, or even "that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842.

Prison officials have a duty to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* at 832, quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984). *See also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (second-hand cigarette smoke); *Dixon v. Godinez*, 114 F.3d 640, 643 (7th Cir. 1997) (extreme cold); *Wallis v. Baldwin*, 70 F.3d 1074, 1076-1077 (9th Cir. 1995) (deliberate exposure to asbestos); *Williams v. Griffin*, 952 F.2d 820, 826 (4th Cir. 1991) (prison overcrowding and lack of sanitation); *Good v. Comm'r of Corr.*, 417 Mass. 329, 335-336 (1994) (contaminated water); *Ahearn v. Vose*, 64 Mass. App. Ct. 403, 414-415 (2005) (grossly unsanitary toilet facilities).

Unitt alleges that, through reports from state officials and her own complaints, the Superintendent defendants were aware of the ongoing

problems at MCI Framingham – mold, inadequate cooling and ventilation, overcrowding, and exposure to harmful levels of asbestos and PCBs. She also alleges that she suffered injury from these conditions of confinement. Thus, she adequately pleads a causal connection between the conditions of confinement and her injuries. She also adequately pleads an indifferent state-of-mind on the part of the Superintendent defendants to the significant risk of harm that the environmental degradation at MCI Framingham posed to inmates in general, and especially inmates like Unitt with preexisting serious health conditions. While Unitt's Amended Complaint, which was filed while she was proceeding *pro se,* is unnecessarily cluttered with citations to the Code of Massachusetts Regulations and sometimes spurious case law, when viewed in its totality, it sufficiently alleges that she was subjected to conditions of confinement that violated Eighth Amendment standards of decency.[5]

---

[5] To be clear, the court is not prejudging whether conditions as they may have existed at MCI Framingham in fact offended the Eighth Amendment. At this point in the proceedings, the court is required to treat every well-plead allegation as true. Ultimately, "whether prison conditions are sufficiently harmful to establish an Eighth Amendment violation, is a purely legal determination for the court to make." *Torres v. Comm'r of Corr.*, 427 Mass. 611, 614 (1998), citing *Hickey v. Reeder*, 12 F.3d 754, 756 (8th Cir. 1993). That, however, is a matter to be dealt with on a fully developed record, which this is not.

VI. Summary Judgment

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Although defendants seek a *brevis* judgment as well as a dismissal, discovery in the case was stayed at defendants' request pending the filing of their instant motion.[6] In support of summary judgment, defendants rely on the affidavits of DOC officials who state that they were never aware of any health-threatening environmental conditions at MCI Framingham. They also point to MCI Framingham's accreditation by the American Correction Association, and the absence of any previous lawsuit by an MCI Framingham inmate raising concerns similar to those limned in Unitt's Amended Complaint. This may well ultimately lead to summary judgment in defendants' favor, but in

---

[6] Defendants also make a passing reference to an entitlement to qualified immunity. Only in the absence of a dispute over a genuine material fact is the right of a defendant to qualified immunity a question of law for the court. *Cox v. Hainey*, 391 F.3d 25, 29 (1st Cir. 2004). Where, as here, a decision of law cannot be made without the resolution of factual disputes (in this case defendants' state of mind, the gravity of the environmental conditions at MCI Framingham, and the remedial measures that were taken), any decision as to qualified immunity would be premature. *See St. Hilaire v. City of Laconia*, 71 F.3d 20, 24 n.1 (1st Cir. 1995).

fairness to Unitt, she should have a full and fair opportunity to conduct discovery before the court makes a final determination.[7]

CONCLUSION

In accordance with the foregoing: (1) all claims for injunctive relief are dismissed with prejudice; (2) all official capacity claims are dismissed with prejudice; (3) all personal capacity claims against Bennett, Turco, Spencer, and O'Brien are dismissed with prejudice; (4) all claims under the Toxic Substances Control Act and the Clean Air act are dismissed with prejudice; and (4) defendants' motion to dismiss is DENIED as to claims under the Eighth Amendment. Defendants' motions for summary judgment and

---

[7] At least one exhibit to Unitt's opposition to the motion for summary judgment suggests there could be more heft to her claim than defendants suggest. Unitt has submitted a 2016 draft letter from an environmental geotechnical company addressed to John O'Donnell of the Commonwealth's Division of Capital Asset Management and Maintenance concerning PCBs at MCI Framingham. *See* Dkt #78-3. The writer mentions PCBs in the caulking at MCI Framingham and concludes that the "PCBs in air in the MCI Framingham facility cells is most likely greater than EPA's health-based criteria." *Id.* at 4. He continues: "It is my further opinion that if informed of the situation, EPA would quickly seek to 1) require immediate air testing to permit an accurate assessment of health risk to the residents; and 2) seek to have the PCBs from the facility eliminated." *Id.* The writer also notes: "My understanding is that the heating ventilation and air conditioning system (HVAC) at MCI Framingham is not fully functional and as a result the level of fresh air makeup may be less than the original specifications called for." *Id.* at 3. While this letter is not presented to the court in an admissible evidentiary form, it does suggest that allowing Unitt to continue discovery could lead to admissible evidence supporting her claim.

request for a grant of qualified immunity are denied without prejudice.  A scheduling order will follow.

                              SO ORDERED.

                              /s/Richard G. Stearns_____
                              UNITED STATES DISTRICT JUDGE